RADER, Chief Judge,
dissenting.
There is a “heavy presumption” in favor of the ordinary meaning of claim language. Bell Atl. Network Servs., Inc. v. Covad Commc’ns Grp., Inc., 262 F.3d 1258, 1268 (Fed.Cir.2001). To overcome this presumption, the patentee must “clearly set forth” and “clearly redefine” a claim term away from its ordinary meaning. Id. The disavowal must be “unmistakable” and “unambiguous.” Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1322 (Fed.Cir.2012). This standard is “exacting.” Thorner v. Sony Computer Entm’t Am. LLC, 669 F.3d 1362, 1366 (Fed.Cir.2012). In my judgment, the patentees did not disavow the ordinary meaning of “culturing ... cells in three-dimensions” to exclude the use of beads. Therefore, I respectfully dissent.
I.
Cells can be cultured on microcarrier beads in two-dimensions or in three-dimensions. Appellee’s Br. 7-8. When cultured on beads in two-dimensions, the cells grow on the surface of each bead as single layer — or monolayer — of cells. J.A. 100972.
[[Image here]]
Appellant’s Br. 7.
When cultured on beads in three-dimensions, the cells growing on the surface of one bead are allowed to connect with cells growing on the surface of another bead. This forms an interconnected structure having “cellular bridges” comprised of multiple layers of cells. J.A. 100974.
[[Image here]]
Appellant’s Br. 7.
The district court found, and the parties do not dispute, that the ordinary meaning of “culturing ... cells in three-dimensions” includes the use of beads. J.A. 21. The district court held, however, that the patentees disavowed the ordinary meaning to exclude the use of beads, based on four references to beads in the patent specification. As described below, these references do not amount to an unmistakable and unambiguous disavowal.
II.
The first reference to beads appears in the “Background of the Invention” section of the specification:
Conditioned medium contains many of the original components of the medium, *1212 as well as a variety of cellular metabolites and secreted proteins, including, for example, biologically active growth factors, inflammatory mediators and other extracellular proteins. Cell lines grown as a monolayer or on beads, as opposed to cells grown in three-dimensions, lack the cell-cell and cell-matrix interactions characteristic of whole tissue in vivo.
'494 patent col. 1 11. 33-44 (emphasis added). In my view, the patentees used the disjunctive phrase “as opposed to” to distinguish “cells grown in three-dimensions” from cells grown “on beads” in two-dimensions.
The phrase “[c]ell lines grown as a monolayer or on beads” can reasonably be interpreted to mean cells cultured as a monolayer, or, as a monolayer on beads as described at the outset of this opinion. The parties do not dispute that cells cultured as a monolayer are inherently two-dimensional. See '494 patent col. 1 11. 5-8.
Furthermore, the specification teaches that cells cultured “as a monolayer or on beads” are inferior to cells cultured in three-dimensions because they “lack the cell-cell and cell-matrix interactions characteristic of whole tissue in vivo.” '494 patent col. 1 11. 39-40. Uncontroverted extrinsic evidence shows that cells cultured in three-dimensions with beads have the same beneficial cell-cell and cell-matrix interactions as cells cultured in three-dimensions without beads:
Q. In your opinion, Dr. Salomon, do fibroblasts that are cultured in three-dimensions on microcarriers or beads, do they exhibit cell-to-cell and cell-matrix interactions characteristic of whole tissue in vivo.
A. Yes.
Q. And have you seen that?
A. Yes.
Q. And is that — is your opinion about that functional definition applied to three-dimensional use of beads consistent with what we saw in the Doyle reference, the ... Qiu reference and the other article?
A. Yes.
J.A. 101614-15.
Dr. Salomon’s testimony seems to confirm that the patentees’ reference to cells grown “on beads” is in the context of two-dimensional cultures. Otherwise, it would not have made sense for the patentees to distinguish cells grown “on beads” from “cells grown in three-dimensions” because they have the same cell-cell and cell-matrix interactions characteristic of whole tissue in vivo.
The court recognizes this, but refuses to give Dr. Salomon’s testimony any weight because it “consists exclusively of three conclusory affirmations elicited by leading questions posed by SkinMediea’s counsel. His testimony lacks any convincing detail explaining why or how cells in bead cultures exhibit the characteristics of whole tissue in vivo he claims they possess.” Majority Op. at 1209. To my eyes, Dr. Salomon’s testimony, when viewed as a whole, deserves great weight and respect.
Dr. Salomon testified extensively as to the nature of cells cultured on beads in both two-dimensions and three-dimensions. He discussed growth factors, cell proliferation, adhesion molecules, extracellular matrices, and gene expression, and “show[ed] you how you can do the same things with beads but now get three-dimensional growth.” J.A. 101546-55. Dr. Salomon’s testimony also included a detailed animated presentation and references to “a very well-known text-book to [persons of skill] in the field.” J.A. 101553-55.
Much of Dr. Salomon’s testimony does not appear in the parties’ joint appendix *1213 because the extent of Dr. Salmon’s testimony was not an issue in front of the district court. Dr. Salomon’s testimony— including his assertion that cells cultured in three-dimensions with beads have the same beneficial cell-cell and cell-matrix interactions as cells cultured in three-dimensions without beads — was unrefuted. Histogen even conceded at oral argument that cells cultured in three-dimensions with beads have superior cell-cell and cell-matrix interactions compared to cells cultured in two-dimensions with beads. Oral Argument at 28:53, available at http://www.cafc. uscourts.gov/oral-argumenb-recordings/ 2012-1560/all.
- The reason the district court refused to consider Dr. Salomon’s testimony was because it “is inconsistent with the intrinsic patent record.... ” J.A. 23 n. 5. This court agrees and states:
The patentees plainly stated in the written description that: “Cell lines grown as a monolayer or on beads, as opposed to cells grown in three-dimensions, lack the cell-cell and cell-matrix interactions characteristic of whole tissue in vivo.” Dr. Salomon, though, testified that “fibroblasts culture[ed] in three-dimensions on microcarriers or beads, ... exhibit cell-to-cell and cell-matrix interactions characteristic of whole tissue in vivo.” As the district court found, Dr. Salomon’s testimony is “inconsistent with the intrinsic patent record.”
Majority Op. at 1210 (emphases original) (citations omitted). However, this conclusion only highlights the issue: whether or not the patentees’ reference to “on beads” is in the context of two-dimensional cultures. If so, then Dr. Salomon’s testimony is entirely consistent with the intrinsic patent record.
As to the leading nature of the questions posed by SkinMedica’s counsel, Histogen did not object. Any defect as to the form of those questions has been waived. Fed. R.Civ.P. 32(d)(3)(B).
In sum, this reference to “on beads” is not a clear disavowal of “culturing ... cells in three-dimensions.” At a minimum, even absent Dr. Salomon’s probative testimony, the specification is ambiguous. This court’s precedent requires more.
III.
The second reference to beads immediately follows the first and is part of the same discussion:
Cell lines grown as a monolayer or on beads, as opposed to cells grown in three-dimensions, lack the cell-cell and •cell-matrix interactions characteristic of whole tissue in vivo. Consequently, such cells secrete a variety of cellular metabolites although they do not necessarily secrete these metabolites and secreted proteins at levels that approach physiological levels. Conventional conditioned cell culture medium, medium cultured by cell-lines grown as a mono-layer or on beads, is usually discarded or occasionally used in culture manipulations such as reducing cell densities.
'494 patent col. 1 11. '33-44 (emphasis added). This reference to beads is not a clear disavowal for the same reasons noted above.
This reference merely states that the medium resulting from cells grown “as a monolayer or on beads” do not secrete cellular metabolites and proteins at levels that approach physiological levels. However, as mentioned above, cells cultured in three-dimensions using beads have the same beneficial cell-cell and cell-matrix interactions as cells cultured in three-dimensions without beads. Thus, the resulting mediums would contain the same levels of metabolites and proteins. It would not make sense for the patentees to distin *1214 guish the medium resulting from cells cultured “on beads” from that of cells cultured in three-dimensions unless “on beads” is in the context of two-dimensional culturing.
IV.
The third reference to beads is in the section titled “Detailed Description of the Invention”:
The present invention relates to novel compositions comprising any conditioned defined or undefined medium, cultured using any eukaryotic cell type or three-dimensional tissue construct and methods for using the compositions. The cells are cultured in monolayer, beads (ie., two-dimensions) or, preferably, in three-dimensions.
'494 patent col. 7 11. 24-29 (emphasis added). This reference to beads is not an unmistakable and unambiguous disavowal.
The abbreviation “ie.” is commonly used as a qualifier, meaning “that is to say” or “in other words.” That is consistent with how the patentees used “ie.” in other parts of the specification. Contra Majority Op. at 1200; see, e.g., '494 patent col. 15 11. 15-19. It is reasonable to view the “ie.” in this case as merely clarifying that the reference to beads is in the context of two-dimensions. The ambiguity is readily apparent. Nonetheless this court, without well-grounded reasoning, concludes that the patentees used “ie.” to redefine beads as something other than the plain and ordinary meaning as understood by those skilled in the art. Majority Op. at 1199— 1202.
V.
The fourth reference to beads also occurs in the section titled “Detailed Description of the Invention”:
The cells may be cultured in any manner known in the art including in monolayer, beads or in three-dimensions and by any means.... Methods of cell and tissue culturing are well known in the art....”
'494 patent col. 9 11. 66-col. 10 1. 3. Again, because culturing cells using beads in both two-dimensions and three-dimensions was well-known in the art, I do not find a clear and unmistakable disavowal merely because the patentees used “the disjunctive ‘or’ to differentiate between cells cultured using beads and those cultured in three-dimensions.” Majority Op. at 1202.
VI.
In sum, to my eyes, the four references to beads relied on by this court are ambiguous. They do not meet the exacting standard imposed by this court’s precedent. Because I would find that the patentees did not unmistakably and unambiguously disavow the ordinary meaning of “culturing ... cells in three-dimensions” to exclude the use of beads, I would reverse the district court’s grant of summary judgment.