NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TRISTRATA, INC.,**
*Plaintiff-Appellant,*

**v.**

**MICROSOFT CORPORATION,**
*Defendant-Appellee,*

AND

**ADOBE SYSTEMS INCORPORATED,**
*Defendant-Appellee.*

---

2014-1168

---

Appeal from the United States District Court for the Northern District of California in No. 3:11-cv-03797-JST, Judge Jon S. Tigar.

---

Decided: December 4, 2014

---

BRUCE J. WECKER, Hausfeld LLP, of San Francisco, California, argued for plaintiff-appellant. On the brief was ROBERT J. YORIO, Carr & Ferrell LLP, of Menlo Park, California.

ERIC L. WESENBERG, Perkins Coie LLP, of Palo Alto, California, argued for defendant-appellee Microsoft Corporation. With him on the brief were KENNETH J. HALPERN; CHRISTINA J. MCCULLOUGH, of Seattle, Washington, and DAN L. BAGATELL, of Phoenix, Arizona. Of counsel on the brief was STACY QUAN, Microsoft Corporation, of Redmond, Washington.

MARC BELLOLI, Feinberg Day Alberti & Thompson, LLP, of Menlo Park, California, argued for defendant-appellee Adobe Systems Incorporated. With him on the brief were IAN FEINBERG, CLAYTON THOMPSON, and YAKOV ZOLOTOREV. Of counsel on the brief was THOMAS R. BURNS, JR., Adduci, Mastriani, & Schaumberg, LLP, of Washington, DC.

—————————

Before LOURIE, SCHALL, and DYK, *Circuit Judges.*

SCHALL, *Circuit Judge.*

## DECISION

TriStrata, Inc. ("TriStrata") appeals the judgment of non-infringement of the United States District Court for the Northern District of California in favor of Microsoft Corporation and Adobe Systems Incorporated ("Appellees") in TriStrata's suit against them for infringement of U.S. Patent Nos. 7,257,706 ("the '706 patent") and 7,743,249 ("the '249 patent"). *TriStrata, Inc. v. Microsoft Corp.*, No. 11-cv-03797-JST (N.D. Cal. Nov. 22, 2013), ECF No. 131. The district court entered judgment in favor of Appellees after the parties stipulated to non-infringement following the court's construction of five claim terms. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). For the reasons set forth below, we *affirm*.

DISCUSSION

I.

The patents-in-suit, which share a common specification, relate to encrypting electronic documents so that they may be openly distributed over insecure networks, such as the Internet, but at the same time may be accessible by permitted recipients. This encryption system is referred to as an "efficient multicast key management system." '706 patent col. 2 ll. 17–18. It provides security by transmitting a data structure called a "seal" along with the encrypted document. *Id.* col. 2 ll. 26–30. The "seal," in turn, contains an encryption key or information to generate an encryption key, which allows recipients to unlock the encrypted documents. *Id.* col. 2 ll. 31–36. Claim 1 of each patent is representative of the claims at issue.

Claim 1 of the '706 patent reads as follows:

1. A method of securing a document stored in a computer system which is part of a network, comprising:

creating a seal associated with a document which is to be stored or shared within the computer system or network:

placing in the seal information identifying the person requesting that the document be secured (hereinafter the "requestor"); and

placing in the seal information identifying who can access the document;

thereby allowing one or more designated persons to have access to the document in accordance with the information in the seal.

*Id.* col. 10 ll. 37–49.

Claim 1 of the '249 patent reads as follows:

1. A system for securing a document stored in a computer system which is part of a network, comprising:

a storage device storing a seal for association with a document which is to be stored or shared within the computer system or network, said seal comprising;

a) information identifying a requestor requesting that the document be secured; and

b) information identifying one or more parties qualified to access the document.

'249 patent col. 10 ll. 29–37.

On appeal, TriStrata challenges the district court's construction of only one term in the '706 and '249 patents: "seal." It appears in every asserted claim. The district court rejected a general-use dictionary definition of "seal" and construed it as "[a] data structure generated by a security server and containing a key or information to generate a key, wherein part or all of the data structure is encrypted and decrypted only by the security server that created it." *TriStrata, Inc. v. Microsoft Corp.*, No. 11-cv-03797-JST, 2013 WL 5645984, at *7–8 (N.D. Cal. Oct. 15, 2013) ("*Claim Construction Order*"). TriStrata argues that, in construing "seal," the district court erred because it deviated from the plain and ordinary meaning of the term and imported three features from the specification as claim limitations.

Before the district court, TriStrata proposed that "seal" be construed as "[i]nformation in the form of computer bits used by a computer system to secure documents through encryption . . . [which] contains information relating to an encryption/decryption key, such as information from which the key can be derived or the key itself." TriStrata now urges that "seal" should have been construed in accordance with its general-purpose diction-

ary definition as "something that secures (as a wax seal on a document)."

## II.

The only issue on appeal is claim construction. Claim construction is a question of law that we review *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).\* The words of a claim are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). In determining that meaning, we look to how one of skill in the relevant art would understand the term at the time of the invention, based upon the language of the claim and the pertinent intrinsic evidence, and where appropriate, extrinsic evidence. *Id.* at 1312–14, 1317; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

## A.

TriStrata argues that the ordinary and customary meaning of "seal" according to a general-purpose dictionary is controlling. In support of its position, TriStrata interprets our decision in *Thorner v. Sony Computer Entertainment America, Inc.*, 669 F.3d 1362 (Fed. Cir. 2012), as requiring an ordinary dictionary definition absent clear lexicography or manifest disavowal of claim

---

\* In *Teva Pharmaceuticals USA v. Sandoz Inc.*, No. 13-854, the Supreme Court is considering the level of deference given to a district court's claim construction. The outcome of that appeal would not affect the outcome here. Deference to the district court's claim construction or factual findings would serve only to underscore the appropriateness of affirmance in this case.

scope. In *Thorner*, we stated that there are only two exceptions to the general rule that claim terms are given their ordinary and customary meanings: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." 669 F.3d at 1365. TriStrata contends that neither of these exceptions is present here and that, thus, the dictionary definition of "seal" as "something that secures" is both the customary and guiding meaning of the term.

We do not agree. As explained in *Phillips*, because the meaning of a claim term, as viewed by a skilled artisan, is not always immediately apparent, and because patentees may use claim terms idiosyncratically, the specification is highly relevant to the claim construction analysis. 415 F.3d at 1314. Indeed, it is often "the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Examining the written description before relying on extrinsic evidence, such as dictionaries, mitigates the risk of "transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context." *Id.* at 1321.

In the two patents at issue, the term "seal" is used in a manner particular to the invention and unique to the cryptographic arts. The specification states that the "system allows the transmission of *what are called* 'permits' and 'seals,'" that "the encoded key *is called* a 'seal,'" and that the "security sever generates *what is called* a 'seal.'" '706 patent col. 2 ll. 26–38 (emphases added). Indeed, the Detailed Description states that "[s]eals and permits are described in detail below," *id.* col. 4 ll. 33–36, which would be unnecessary if "seal," as used in the patents, had a broad, accepted meaning in the cryptographic arts. Intentionally off-setting the term "seal" and providing additional, term-specific explanations are

signals that "seal" is used in a context-specific manner, thereby undercutting TriStrata's argument for a general-use dictionary definition. The use of "seal" here also stands in contrast to what was the case in *Thorner*. There, a customary meaning in the mechanical arts for the term "attached" was readily and immediately apparent. 669 F.3d at 1367–68 ("The plain meaning of the term 'attached' encompasses either an external or internal attachment" in the context of mechanical "tactile feedback controllers."). We find no error in the district court's refusal to apply a dictionary definition of "seal" in view of the specification and the field of invention.

B.

The district court explained why the specification provided the appropriate definition of "seal." *Claim Construction Order*, 2013 WL 5645984, at *6–9. Relying on *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295 (Fed. Cir. 2004), the district court found that TriStrata had limited the ordinary meaning of "seal" by implication. *Claim Construction Order*, 2013 WL 5645984, at *7–8; *Irdeto*, 383 F.3d at 1300 (absent an "accepted meaning, we construe a claim term only as broadly as provided for by the patent itself"). The district court held that a person of skill in the cryptographic arts, after reading the claims and written description, would understand "seal" to include the following limitations: "[a] data structure generated by a security server . . . , wherein part or all of the data structure is encrypted and decrypted only by the security server that created it." *Claim Construction Order*, 2013 WL 5645984, at *8. TriStrata argues against the "generated by a security server" and "encrypted and decrypted only by the security server" limitations. We find no error in the district court's reasoning and reject TriStrata's argument that the district court erred by importing these limitations into the claims from the specification.

First, a server-generated "seal" is consistently and exclusively taught throughout the patents. The Summary of the Invention states that, "[i]n accordance with this invention, the security server generates seals and permits." '706 patent col. 2 ll. 50–51; *see also, e.g., id.* col. 2 ll. 31–32 ("[T]he security server generates what is called a 'seal.'"). The use of "in accordance with this invention," in conjunction with its place in the Summary of the Invention, suggests that the phrase "the security server generates seals" applies to the entire invention, and not merely one embodiment. While the location of a passage in the specification is not determinative, "the location [in the Summary of the Invention] can signal the likelihood that the statement will support a limiting definition." *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004). We have also held that the use of phrases such as "in accordance with the present invention" is a strong indication that a statement is not limited to a single, preferred embodiment. *E.g., Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006).

Second, the specification is also clear that a "seal" is a data structure encrypted and decrypted by the same security sever. The Summary of the Invention states that "[t]he encoded key is called a 'seal' which is generated by the security server." '706 patent col. 2 ll. 36–38. It continues by unequivocally stating: "All the information contained in a seal is encrypted by the security server and can only be 'opened,' i.e., decrypted, by the security server which encrypted the seal." *Id.* col. 2 ll. 46–49. The Detailed Description reiterates, in a paragraph starting with the words "in general," that "[t]he seal can only be 'opened' by security server 303, and cannot be interpreted unless security server 303 opens it." *Id.* col. 6 ll. 50–58. It is precisely this server architecture that "solves the broadcast key distribution problem" by allowing a party to "broadcast[] the same encrypted data stream to all the

recipients regardless of the identity or the number of recipients" because "[u]nauthorized recipients are not allowed to open the seal at the security server [that created it]." *Id.* col. 7 ll. 57–65. And, as the district court correctly explained, "[i]f the seal were not encrypted, the security scheme would not function, and the security server would serve no purpose, as it would be transmitted in plaintext." *Claim Construction Order*, 2013 WL 5645984, at \*8. The use of a security server to encrypt and decrypt the "seal" is fundamental to the invention, and nothing TriStrata has pointed to convincingly demonstrates that the seal could be generated, encrypted, and decrypted in any other way.

## III.

For the foregoing reasons, we hold that the district court properly construed "seal" as it is disclosed in the claims and the written description of the invention. We therefore affirm the judgment of non-infringement.

**AFFIRMED**