NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAMESURF, INC.,**
*Appellant*

**v.**

**INTUIT INC.,**
*Appellee*

---

2024-2268, 2024-2269

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2023-00339, IPR2023-00342.

---

Decided:  May 21, 2026

---

ALAN PETER BLOCK, McKool Smith, P.C., Los Angeles, CA, argued for appellant.  Also represented by RYAN B. MCBETH, ARCHIS VASANT OZARKAR, Houston, TX; STEVEN POLLINGER, Austin, TX.

MICHAEL JOHN SACKSTEDER, Fenwick & West LLP, San Francisco, CA, argued for appellee.  Also represented by PAYAM AHMADI, SHANNON TURNER; GEOFFREY ROBERT MILLER, New York, NY; JONATHAN G. TAMIMI, Seattle, WA.

---

Before DYK, CHEN, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Samesurf, Inc. ("Samesurf") is the owner of U.S. Patent No. 9,185,145 ("'145 patent"), entitled "Method and Apparatus for the Implementation of a Real-Time, Sharable Browsing Experience on a Guest Device." J.A. 202. In an *inter partes* review ("IPR"), the Patent Trial and Appeal Board ("Board") issued a final written decision ("FWD") finding that all claims of the '145 patent were obvious over World Intellectual Property Organization International Publication No. WO 00/48110 ("Lebrun") in view of U.S. Patent Application Publication No. 2005/0033656 ("Wang"). Samesurf argues that the Board's unpatentability determination rests on an incorrect claim construction. Because the Board correctly construed the disputed claim term, we affirm.

I

The '145 patent generally relates to "the implementation of a synchronized browsing session." J.A. 224 at 1:15-19. Claim 1 recites:

A method performed by a guest device for joining a synchronized browsing session administered by a synchronization server, comprising:

receiving from the synchronization server a session invitation including a session identifier associated with a host device;

activating the session invitation to send a request to join said synchronized browsing session to said synchronization server;

receiving *web browsing interaction data* from said synchronization server, wherein said *web browsing interaction data* is associated with:

> a website server that is independent of the synchronization server, and
>
> the host device that has initiated the session invitation; and
>
> operating an application based on said *web browsing interaction data* received from said synchronization server to access a website server independent of the synchronization server subsequent to the activation of the session invitation.

J.A. 234-35 at 22:62–23:15. (emphasis added).

On Intuit Inc.'s ("Intuit") petition, the Board instituted IPR of all claims of the '145 patent. In their briefs, the parties disputed the meaning of "web browsing interaction data." The Board, in its FWD, held that this claim term "would have been understood by one of ordinary skill . . . as data related to web browsing interactions." J.A. 39. In a thorough 20-page claim construction analysis, the Board explained that the term was sufficiently broad to encompass "data resulting from host device interactions performed on a website (including webpages or partially filled webpages related to web browsing interactions)." J.A. 39.

As it was undisputed that "Lebrun expressly discloses . . . sending a partial webpage without multimedia elements to the web clients," application of the Board's construction led inexorably to the conclusion that Lebrun "disclose[d] or suggest[ed] 'web browsing interaction data.'" J.A. 60. Hence, the Board determined that the "combination of Lebrun and Wang discloses or suggests" all limitations of the challenged claims, meaning that Intuit "has shown by a preponderance of the evidence that all challenged claims are unpatentable." J.A. 60-63, 99.

Samesurf timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

Claim construction is a question of law that may involve underlying factual inquiries. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015). We review the Board's claim construction de novo and its subsidiary factual findings for substantial evidence. *See Dionex Softron GmbH v. Agilent Techs., Inc.*, 56 F.4th 1353, 1358 (Fed. Cir. 2023).

## III

Samesurf argues that the Board erred by not limiting "web browsing interaction data" to "data describing interactions performed on a website by a host device." Open. Br. at 51. In particular, Samesurf insists that under the proper construction, "web browsing interaction data" cannot include data resulting from host device interactions performed on a website, such as Lebrun's partially filled webpages. Samesurf asserts it would not make sense for the web pages delivered to the user, or partial web pages (stripped of multimedia data), to be considered "web browsing interaction data" because that data does not itself enable the user to participate in a synchronization session. Intuit disagrees, and so do we.

Samesurf provides no persuasive reason for why a person of ordinary skill in the art, reviewing the '145 patent, would understand the claim term "web browsing interaction data" to include anything less than all data related to web browsing interactions, including webpages and partially filled webpages. "The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). Neither party here suggests the patentee acted as a lexicographer to redefine the disputed term, nor that there has been a disclaimer.

We discern nothing in the claim language that would cause a skilled artisan to understand the broad term "web browsing interaction data" to be limited to interaction data generated by the host device, and not to also include data resulting from the interactions. None of the other claim limitations – which require that "web browsing interaction data" is received by the "guest device" from the "synchronization server," associated with a "website server" and a "host device," and used by the "guest device" to "access a website server" – describes the content of the "web browsing interaction data" nor suggests that "web browsing interaction data" cannot include partially filled websites. J.A. 235 at 23:4-15. Dependent claim 5 additionally states that "web browsing interaction data further comprises information related to shared user input web browsing interactions depicted in a first web browsing window." J.A. 235 at 23:24-27. As the Board explained, Samesurf's narrower construction would limit control of the synchronized web browsing session to only the host, despite the patent purporting to allow control by multiple devices.

The specification, which does not even use the term "web browsing interaction data," does not help Samesurf. Samesurf points to a statement in the specification describing the "present invention" as a guest device "receiving information *related to* a shared web browsing interaction performed by a host device from a synchronization server, and performing the shared web browsing interaction based on the information received from the synchronization server." J.A. 225 at 3:10-16 (emphasis added). We see no merit to Samesurf's unexplained assertion that "'information *related to* a shared web browsing interaction' is *narrowly* understood to refer to 'information *describing* a shared web browsing interaction.'" Open. Br. at 44.

Even accepting as true Samesurf's contention that "the only thing described in the specification that constitutes 'web browsing interaction data' as described in the claims is 'communication message 64,'" Open. Br. at 52, and even

assuming "communication message 64" is narrowly limited to "'a duplicate of website request 60 . . . or . . . the URL address of [the] website server,'" Open. Br. at 50 (quoting J.A. 231 at 16:42-47), the specification does not decisively support Samesurf's construction.  "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope," which has not occurred here.  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).  Indeed, the specification expressly refers to the embodiment on which Samesurf relies as exemplary.  J.A. 231 at 16:45-51.

Finally, Samesurf provides no support for its insistence that the Board's construction renders the invention "inoperable."  Open. Br. at 40.  Samesurf argues that "a shared web browsing interaction cannot be performed based on the webpage or partially filled webpage that would result from the interaction to be performed."  *Id.*  However, what the claims require is "operati[on] [of] an application based on said web browsing interaction data . . . to access a website server."  J.A. 235 at 23:11-15.  Samesurf identifies no evidence that would allow us to conclude that partially filled webpages would be unable to do this.

 Therefore, we agree with the Board that the correct construction of "web browsing interaction data," as used in the claims of Samesurf's '145 patent, is "data related to web browsing interactions."

IV

We have considered Samesurf's remaining arguments and find they lack merit.  Accordingly, for the reasons given above, we agree with the Board's construction of the disputed term and, thus, its conclusion that all claims of the '145 patent are unpatentable based on obviousness.  The Board's judgment is affirmed.

**AFFIRMED**