# United States Court of Appeals for the Federal Circuit

2009-1068


BID FOR POSITION, LLC,

Plaintiff-Appellant,

v.

AOL, LLC, and GOOGLE, INC.,

Defendants-Appellees.


Gregory S. Dovel, Dovel & Luner, LLP, of Santa Monica, California, argued for plaintiff-appellant. Of counsel was David E. Rosen, Murphy Rosen & Meylan, LLP, of Santa Monica, California.

Charles K. Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges LLP, of San Francisco, California, argued for defendants-appellees. With him on the brief were David A. Perlson and Jamie L. Lisagor.

Appealed from: United States District Court for the Eastern District of Virginia

Judge Jerome B. Friedman

# United States Court of Appeals for the Federal Circuit

2009-1068

BID FOR POSITION, LLC,

Plaintiff-Appellant,

v.

AOL, LLC, and GOOGLE, INC.,

Defendants-Appellants.

Appeal from the United States District Court for the Eastern District of Virginia in case no. 2:07-CV-582, Judge Jerome B. Friedman.

_____

DECIDED:  April 7, 2010

_____

Before NEWMAN, BRYSON, and MOORE, Circuit Judges.

BRYSON, Circuit Judge.

Plaintiff Bid for Position, LLC, appeals from a final judgment of noninfringement entered in its patent infringement suit against defendants Google, Inc., and AOL, LLC. The patent-in-suit, U.S. Patent No. 7,225,151 B1, describes a method for conducting a continuous auction, such as a consumers' auction on the internet for goods or services, or a vendors' auction for positions in an internet advertising display.  The claimed method allows a bidder to select a position of priority in the auction and automatically adjusts the bidder's bid so as to maintain that chosen priority status.  The accused system is Google's internet advertising system, AdWords, which runs continuous

auctions to determine the placement of advertisements on Google's search results pages.[1]

I

A

In the accused AdWords system, advertisers choose keywords to trigger the display of their advertisements. When a keyword is used in a search performed on Google.com, AdWords runs an auction to determine the order in which the advertisements will be placed next to the search results. Each advertiser submits a bid in the form of a Maximum Cost-Per-Click ("CPC"), i.e., the maximum price the advertiser is willing to pay each time its advertisement is "clicked" by a user of the search engine. AdWords then multiplies each bid by a "Quality Score," also known as the estimated Click Through Rate ("eCTR"), which predicts the likelihood that a user searching for the designated keyword will click on the subject advertisement, based on a confidential algorithm that considers various historical factors.

The product of the bid (Maximum CPC) and the Quality Score (eCTR) yields an "Ad Rank" for each advertisement. The Ad Ranks are then used to sort and place advertisements in descending order on the corresponding results page. Once the advertisements have been sorted, the actual cost paid by an advertiser per click is discounted to the lowest price the advertiser could have bid to achieve the same position, using a formula known as generalized second-price auction. Those computations are repeated each time a new search is conducted.

---

[1] AOL's system, AOL Search Marketplace, is a rebranded version of Google's AdWords that does not contain the Position Preference feature. Google's AdSense for Content is also a rebranded version that places advertisements on Google's partner sites.

2009-1068                                      2

AdWords also offers a "Position Preference" feature that allows advertisers to specify a preferred position or range of positions for the placement of their advertisements. The Position Preference feature enables advertisers to select a position or range of positions for AdWords to target, such as position 4, positions 1 through 5, or positions 5 through 10. If the advertiser activates the Position Preference feature, AdWords ensures that the advertisement will never appear below the lowest preferred position, although it may appear above the highest preferred position. AdWords monitors the advertisement's average position over a period of time, as auctions are triggered by relevant keyword searches, and it submits an adjusted proxy bid every 24 hours as needed to keep the advertisement at or above the target position. Other than the periodic substitution of a new proxy bid, the auctions are conducted in the same manner whether or not the Position Preference feature is activated.

B

The '151 patent builds on prior art involving continuous auctions for priority placement in internet search results. An early search engine called Goto.com offered auctions in which advertisers could compete for the top positions on the search results for any given keyword. The highest bidder would appear first in the search results, and each successive entry would be awarded to the next highest bidder. The purported novelty of the '151 patent is that it enables bidders to pursue positions other than the highest available position. It does so by determining whether a bidder's bid is too high for a specific position of priority that the bidder wishes to maintain in the auction. If it is, the system automatically reduces the bidder's bid to avoid exceeding the amount necessary to maintain the bidder's desired position of priority. If the bidder's bid is too

low for a specific position of priority that the bidder wishes to maintain, the system automatically increases the bidder's bid, up to a maximum level set by the bidder. Thus, even though the auction is continuous, the process allows the bidder to maintain a relatively constant position over time, as long as the bidder's maximum bid is not exceeded.

The two claims at issue in this appeal are a method claim and a corresponding system claim. Claim 1 of the '151 patent reads as follows (emphases added):

> A method for automatically managing an auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids, comprising:
>
> receiving bid management data from a first bidder for managing bidding by the first bidder in the auction, the auction having at least two or more positions of priority, the received bid management data including <u>information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction</u>;
>
> checking for if a second bidder holds the selected position of priority, and
>
> checking for whether a first bid from the first bidder exceeds a second bid from the second bidder in <u>the auction for determining continuing priority for providing an ongoing service</u> for the first and second bidder, <u>wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid</u>, and <u>wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid</u>;
>
> according to the bid management data received from the first bidder, automatically incrementing the first bid to a value exceeding the second bid if the first bid does not exceed the second bid, to thereby maintain the selected position of priority for providing the service for the first bidder;
>
> checking for whether the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction, and
>
> if the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction, automatically reducing the first bid to a minimum which allows the bidder to keep the selected position of priority.

Claim 11, the system claim, is identical to claim 1 in all relevant respects except that in the first subparagraph, claim 11 reads, "the received bid management data including selected one of the two or more positions of priority," while claim 1 reads, "the received bid management data including information for selecting one of the two or more positions of priority."[2]

Following a <u>Markman</u> hearing, the district court issued a claim construction order on July 11, 2008. Only three clauses in the claims are relevant to this appeal: (1) "information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction" (claim 1) and "selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction" (claim 11); (2) "wherein the relative position of priority for providing the service for the first bidder is dependent upon whether the value of the first bid exceeds the value of the second bid"; and (3) "the auction for determining continuing priority for providing an ongoing service."

The district court interpreted the first clause to mean that the bidder, not the system, chooses the desired position of priority in the auction. The court found support for that conclusion in the claim language, which stated that the bid management data is "received" from the bidder and that it is the bidder who selects the position of priority to maintain in the auction. The court also pointed to the specification and the prosecution history as indicating that it is the bidder who enters the bid management data.

---

[2]    The district court did not distinguish between the two variations of the clause. The defendants argue in passing that the use of "selected" in the past tense carries some independent significance. The prosecution history indicates, however, that the difference in language does not reflect any difference in claim scope, but is merely the result of a scrivener's error in failing to modify the claim language correctly when the clause "bid management information including a selected position of priority" was amended to read "bid management data including information for selecting one of the two or more positions of priority."

The dispute over the second clause turned entirely on the construction of the term "value." Plaintiff Bid for Position requested that the court construe that term to mean "relative worth, utility, or importance." The district court, however, observed that "value" is used in reference to "bid," and that "bid" was agreed to mean "an offer of a price." The court therefore defined the "value" of a bid to mean simply the monetary amount set forth in the bid.

The district court's construction of the third clause focused on the term "continuing priority" and whether that term includes a temporal aspect, i.e., whether the priority status must be maintained for a meaningful period of time. The court observed that the main purpose of the patent is to maintain the bidder's desired position of priority for a period of time until it is no longer possible to maintain that position without exceeding the maximum bid amount. Accordingly, the court concluded that "continuing priority" requires the bidder to maintain the position of priority for some period of time.

C

On October 15, 2008, the district court granted summary judgment in favor of the defendants. With respect to AdWords without Position Preference, the court found non-infringement as to each of the three contested limitations.

First, the court found that whereas the '151 patent requires bidders to select the position of priority, the AdWords system controls the assignment of positions based on Ad Rank. Because AdWords determines what Quality Score to assign to each advertisement, the court concluded that "[t]he multiplying of the bid with the Quality Score means the advertiser loses control to determine the placement of the advertisement, and a higher bid does not mean a higher placement." Bid for Position,

LLC v. AOL, LLC, No. 07-CV-582, slip op. at 12 (E.D. Va. Oct. 15, 2008). The court also rejected Bid for Position's argument that not activating the Position Preference feature is an implicit choice by the bidder for the highest possible position of priority. That argument, the court explained, "would essentially nullify the position of priority feature of the '151 patent because all auctions would involve positions of priority, and bidders would be choosing positions of priority in every auction simply by submitting a bid." Id. at 13.

Second, the district court held that the '151 patent compares bids and ranks them by bid amount, while AdWords multiplies each bid by a subjective Quality Score to rank ads by relevance rather than by bid amount. Accordingly, a higher bidding advertisement might be placed below a lower bidding advertisement because the latter is deemed more relevant and is given a higher Quality Score.

Bid for Position argued that the Quality Score (or estimated click-through rate) is simply a mechanical conversion factor that converts each bid from cost-per-click to "cost-per-impression," i.e., the cost for each time the advertisement is displayed. The district court rejected that argument on the ground that Ad Rank is not a "bid," and therefore AdWords does not compare bid amounts. The court characterized the Quality Score as a subjective judgment controlled by Google and thus entirely distinct from the bid information submitted by the bidder. The court explained that

> [t]he Quality Score is a judgment made of the advertisement and the keyword attributed to that advertisement to determine the likelihood that an individual will find that advertisement useful when it conducts a search with that keyword. The '151 patent does not assess or evaluate the advertisements of the bidders when determining their ranking.

Bid for Position, slip op. at 17. For that reason, the court rejected Bid for Position's argument that converting a bid into an Ad Rank is a simple conversion of equivalent values, such as the conversion of one currency into another. To the contrary, the court ruled that converting a bid into an Ad Rank is based on a particularized evaluation by the auction system, rather than on a known and objectively determined conversion factor.

Third, the district court found that the '151 patent requires priority to be maintained for some period of time, while AdWords calculates a new Quality Score and Ad Rank each time a search is conducted, without consideration of positions assigned in prior auctions. The court noted that "[w]hile it is possible for the advertisement to have the same Ad Rank and position from one auction to the next, it is a result of mathematical chance, not the deliberate action of AdWords to ensure that the advertisement has the same position from one auction to the next." Bid for Position, slip op. at 19. The court added that holding a position for a single auction is insufficient to satisfy the "continuing priority" limitation because the '151 patent uses the idea of "continuing priority" to mean "that the bidder is able to keep his position of priority through multiple auctions, and the system will manage the bidding to ensure that the bidder keeps that position through multiple auctions." Id. at 20. The court therefore held that AdWords without Position Preference does not infringe the '151 patent.

As to AdWords with Position Preference, the court first ruled that the Position Preference feature does not alter the fact that "AdWords does not determine priority or rank advertisements based upon bid amounts." Bid for Position, slip op. at 21. The court explained that while the Position Preference feature "allows a bidder to enter a

range of preferred positions, it is AdWords that still determines the advertisement's position based upon the Ad Rank." Id.  The court also concluded that selecting the Position Preference feature does not alter the fact that the AdWords system does not ensure continuing priority, since "a new auction is still run for each search, and a new Ad Rank and position are calculated each search." Id. at 22.

With respect to the issue of comparing bid amounts, the court acknowledged that the Position Preference feature computes new proxy bids when it is necessary to maintain the advertiser's preferred position, but it concluded that the system does so by examining the advertisement's individual performance over the previous 24 hours, without any consideration of the other advertisers' bids.  Thus, the district court concluded that the Position Preference feature does not "compare bids" to determine which is greater, and hence does not infringe the '151 patent.

II

We affirm the district court's ruling that AdWords without Position Preference does not infringe, because we agree with the court that the '151 patent does not read on a system that simply selects the highest ranking position of priority that is available for the offered bid, which is what AdWords does when the Position Preference feature is not activated.  Bid for Position's argument to the contrary is barred by the claim language, particularly when read in light of the prosecution history.

The claims recite that the bidder must submit information for selecting a priority position that the bidder wishes to maintain in the auction.  That language suggests that the bidder must select a particular position, not simply accept whatever position its bid will support.  The prosecution history confirms that the patent does not cover a system

in which the bidder simply bids for the "best available" position. During prosecution, the patent examiner issued a rejection stating that the prior art already taught "selecting a bidding position, specifically the highest ranking bid position," and then "automatically reducing the first bid to a minimum which allows the bidder to keep the selected position of priority."

In response to the examiner's rejection, and to avoid the prior art cited by the examiner, the inventor amended the claims to require the entry of information regarding the specific position of priority that the bidder wishes to maintain. Accordingly, it is clear that the inventor disclaimed the subject matter of selecting, through inaction, the highest available priority position. See Seachange Int'l, Inc. v. C-COR, Inc., 413 F.3d 1361, 1372-73 (Fed. Cir. 2005). Because that is how AdWords functions without the Position Preference feature activated, that configuration does not satisfy every limitation of claims 1 and 11, and it therefore does not infringe the '151 patent.

We reach the same conclusion with respect to AdWords with the Position Preference feature activated, but for a different reason. While AdWords with Position Preference allows a bidder to select a specific position of priority, it does not satisfy the limitation of the '151 patent that states: "the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid."

The district court interpreted the "value" of a bid, as used in the patent, to mean the monetary "amount" of the bid, i.e., the price offered by the bidder. Bid for Position contends that the term "value" includes equivalents of the monetary amount of the bid. Bid for Position further argues that the Quality Score in the AdWords system is obtained

simply through a mechanical conversion of the bid amount (i.e., the Maximum CPC), akin to a currency exchange conversion. Therefore, according to Bid for Position, the "value" of the bid, as that term is used in the '151 patent, includes the Ad Rank that results from adjusting the bid by the Quality Score.

The flaw in Bid for Position's argument is that the order of the bidders' bid amounts, arranged according to Maximum CPC, can be entirely different from the order of the bidders' Ad Ranks. If the conversion of bids to Ad Ranks were simply substitutions of equivalent values, the same order of positions would obtain after the conversions. Instead, the application of the Quality Score creates rankings that have no consistent mapping to the original bids.

Bid for Position is also incorrect in arguing for a construction of "value" that is distinct from the amount or price of the bid. The claim language uses the terms "bid" and "value of the bid" interchangeably, such that the two cannot be read to have separate meanings. Claim 1 recites, in a single subparagraph, the step of "checking for whether a <u>first bid</u> from the first bidder exceeds a <u>second bid</u> from the second bidder," wherein the bidders' relative position of priority "is dependent on whether the <u>value of the first bid</u> exceeds the <u>value of the second bid</u>." '151 patent, col. 14, ll. 15-16, 20-22 (emphases added). Under that formulation, it is clear that checking for whether the first bid exceeds the second bid has the function of determining whether the value of the first bid exceeds the value of the second bid, and thus that there is no distinction between the comparison of "bids" and the comparison of "bid values."

The next step in claim 1 recites "incrementing the first bid to a value exceeding the second bid if the first bid does not exceed the second bid." That step would make

no sense if the "value" of the bid for purposes of the patent were different from the amount of the bid submitted by the bidder. It would be meaningless to refer to the "value" of the first bid "exceeding the second bid" if the value of a bid meant something different from the amount of the bid.

The specification supplies further evidence that the terms "bid" and "value of the bid" mean the same thing in the '151 patent. In the detailed description of the first preferred embodiment, for example, the patent provides that a bidder may enter maximum bids into the system and that the system will increase the bidder's lower bids "until they reach desired bidding positions entered by the bidders as long as the bids do not exceed maximum values entered by the respective bidders." The system will ensure relative priority for the bidder "as long as the maximum bid is not exceeded." '151 patent, col. 3, ll. 40-52. As applied to AdWords, the "maximum values entered by the respective bidders" cannot refer to the Ad Ranks, since the bidders do not know what Quality Score the system might assign to their advertisements. Instead, "value," as used in that passage, can only refer to the bid amount, a quantity that the bidders do control.

The same theme is repeated in several of the other embodiments. In the embodiment relating to an auction for a priority position for a website, the specification states that the system "checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page." '151 patent, col. 4, ll. 52-55. Thus, it is the comparison of the bids (i.e., the bid amounts submitted by the bidders) that determines the position of priority, not the comparison of a separately determined "value" of the bids, as calculated by the system. The

specification likewise equates the bidders' bids with the "value" of those bids when it describes an auction for golf tee times as determining priority "based on the relative value of related bids" and checking "for whether the golfer's bid exceeds all other bids in the auction." Id., col. 6, ll. 37-38, 48-49. The same formulation is employed in the description of each of the other embodiments. See id., col. 8, ll. 37-38, 48-50 (in an auction for frequent flyer airline seats, "wherein priority is based on the relative value of related bids," the system "checks for whether the frequent flyer's bid exceeds all other bids in the auction for determining priority for preferred seating"); id., col. 10, ll. 43-44, 55-57 (in an auction for priority position for online vendors, "wherein sales are based on the relative value of related bids," the system "checks for whether the vendor's bid is lower than all other bids in the auction"). In each instance, the "value" of the bid is equated with the bid itself, i.e., the amount of the bid as offered by the bidder.

The consistent use of the term "value" throughout the patent thus confirms that the '151 patent does not read on AdWords with Position Preference, which bases the award of priority on something other than a comparison of the bid amounts. The district court therefore correctly entered summary judgment of no literal infringement with respect to AdWords with Position Preference.

Apart from literal infringement, Bid for Position also argues briefly that the AdWords system infringes the "position of priority" limitation under the doctrine of equivalents. The district court held that a reasonable fact-finder could not conclude that the "ranking of advertisements based upon their Ad Rank is substantially similar to the ranking of advertisements based upon their bid amounts." Bid for Position, slip op. at 17. The court explained that the advertiser controls the ranking of its advertisements

when the ranking is based on the bid amount, but not when it is based on Ad Rank.  An Ad Rank "is not the monetary amount of the bid, and the conversion of a bid to an Ad Rank changes the nature or status of the bid from a monetary amount into a nonmonetary quantity." Id. at 18.

We agree that the method recited in the '151 patent, in which the amount of the bidder's bid determines the placement of the advertisement, is substantially different from AdWords, with or without Position Preference.  In the method of the '151 patent, the ultimate placement of an advertisement is purely a function of the relative amounts of the competing advertisers' bids, whereas in AdWords the ultimate placement of an advertisement is dictated by the product of the bid amount and the Quality Score that AdWords assigns.  Thus, AdWords is not a pure bidding system, such as the system recited in the '151 patent, but instead operates in a quite different manner that enables the bid recipient, i.e., Google, to exercise substantial control over the outcome of the auction.  That difference is sufficiently fundamental that we conclude, as did the district court, that a trier of fact could not properly find the AdWords system to be equivalent to the system recited in the '151 patent.

AFFIRMED.